UNITED STATES DISTRICT COURT          ECF

SOUTHERN DISTRICT OF NEW YORK          11 CV

| | |
|---|---|
| GARANTI FINANSAL KIRALAMA A.S.,<br>                             Plaintiffs,<br>- against -<br>AQUA MARINE & TRADING, INC.,<br>                             Defendants. | COMPLAINT FOR A DECLARATORY JUDGMENT AND AN INJUNCTION |

        Plaintiff, by its attorneys, Cichanowicz Callan Keane, Vengrow & Textor, LLP, for its complaint, alleges on information and belief:

        1.      The jurisdiction of this Court is based on the admiralty and maritime nature of the case within the meaning of 28 U.S.C. 1333(1). This is an admiralty and maritime claim within the meaning of F.R.Civ.P. 9(h).

        2.      Plaintiff is a Turkish corporation with its office and principal place of business in Turkey. At all relevant times, it carried on business in Turkey as a financial leasing company.

        3.      Defendant is a corporation organized and existing under the laws of Nevis, West Indies, with its office and principal place of business in Nevis.

        4.      This is an action for:

            (a)     Injunctive relief pursuant to F.R.Civ.P. 65 enjoining defendant and an arbitral panel from proceeding with New York arbitration of defendant's claims for unpaid invoices for bunkers and lube oil

delivered to the vessels SEMA and CEM REM (hereafter, the 'TWO VESSELS"). Such relief is sought on grounds that:

(i) A mandatory and exclusive forum selection provision on defendant's general terms and conditions requires all disputes to be heard in the Courts of Istanbul, Turkey; and

(ii) Plaintiff is not obligated under any applicable principles of contract or agency law to arbitrate with defendant; and

(iii) The arbitration should also be stayed pending a final determination of this action.

Plaintiff has brought a declaratory judgment action against defendant in that Turkish Court for a determination that it is not personally liable in respect of the purchase/sale transactions, which is still pending. The action was filed before the arbitration proceedings were commenced. The Plaintiff is entitled to request a further declaration within the same action that it is not obligated to arbitrate.

(b) In the alternative, a declaratory judgment pursuant to F.R.Civ.P. 57 and 28 U.S.C. 2201 that plaintiff is not contractually obligated to New York arbitration of defendant's claims for said the unpaid invoices.

5. Defendant has caused an arbitral panel to be constituted here in New York. The panel has set January 17, 2011 as the first adjourned deadline for plaintiff's initial submissions. Plaintiff did not appoint any of the arbitrators and has taken the

2

position throughout that it is not bound by the arbitration clause or personally liable in respect of the underlying purchase/sale of the lube oil and bunkers.

ALLEGATIONS OF FACT

A.  *Defendant's Contentions*

6.  Defendant's claim against plaintiff is set out in its initial arbitration submission.  *EXHIBIT A*.  Its claim may be summarized as follows.  Defendant alleges that:

- (a) Plaintiff is the registered owner of the TWO VESSELS.  *EXHIBIT A, p. 2*.
- (b) Bunkers and lube oil were ordered by plaintiff's managing agent, non-party, CMR Denizcilik Veticaret A.S. (hereafter, "CMR") and supplied on four occasions from December 24, 2008 to March 26, 2009.  *Id. at pp. 2 – 3*.
- (c) Plaintiff never objected to the defendant's invoices for the bunkers and lube oil delivered.  *Id. at p. 4*.
- (d) The bunker order Confirmations issued by defendant contains the following provision:

  > The Seller [defendant] shall have the right to take any legal action before the Court in any country either to (a) pursue the merits of the claim against the buyer before such courts or start arbitration in any place as per Law and arbitration clause of 16 of Bimco Fuelcon 1995.

  [Bracketed text ours].  *Id. at p. 5*.
- (e) The arbitration clause of 16 Bimco Fuelcon 1995 provides:

3

> This Contract shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States and should any dispute arise out of this contract, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final and for purpose of enforcing any award, this agreement may be made a rule of the Court.  The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc.

*Id. at p. 6.*

    (f)    Defendants appointed its arbitrator, and when plaintiff did not appoint one of its own - arguing it was not obligated to arbitrate - defendant made the second appointment on its own.  *Id.*

B.    *Plaintiff's Contentions*

7.    Plaintiff contends that it is not personally liable for the unpaid purchase price or obligated to arbitrate because:

    (a)    It is not now, nor has it ever been a public or private carrier by sea. It does not and has not operated the TWO VESSELS or any other ships.  It carries on business as a financial leasing company.  Its name, "Garanti Finansal" is Turkish for "Financial Guaranty."

    (b)    Although it is the registered owner of the TWO VESSELS, at all relevant times, it had leased the two vessels out to the following lessees:

4

- The M/V CEMREM to nonparty lessee, Cemre Shipping Inc. ("Cemre"), and

- The M.V. SEMA ANA to nonparty lessee, Daldem Shipholding Co. ("Daldem").

The leases were the equivalent of bareboat charters (with options to purchase) under which plaintiff retained only legal title to the vessels while their possession, control and operation were given over to the Lessees/Bareboat Charterers, Cemre and Daldem (hereafter "Bareboat Charterers"). All personal liabilities in respect of the operation of the TWO VESSELS were, under Turkish Law (the law of the contracts), placed upon the Bareboat Charterers, not upon plaintiff. *See, para. 11(h), below*.

(c) While CMR - the agent that defendant alleges ordered the bunkers and lube oil (see, para. 6(b) above) - may have acted as an agent during the lease period, it was not plaintiff's agent, and plaintiff had no contract with CMR. Plaintiff did not appoint, compensate, or control it.

(d) Defendant's invoices for the bunkers and lube oil were not sent to plaintiff, nor does defendant allege that they were. They were later shown to plaintiff during defendant's subsequent collection efforts after CMR apparently did not pay. At that time, plaintiff did protest them.

5

(e) In any event, defendant's form general terms of sale contains a mandatory and exclusive forum selection provision requiring all disputes to be resolved before the Court in Istanbul, Turkey.

C.   *Plaintiff's Allegations of Fact*

8. Attached hereto as the following exhibits are true and complete copies of:

EXHIBIT B - The Turkish Language lease agreement covering the M/V SEMA ANA.

EXHIBIT C - The Turkish Language lease agreement covering the M/V CEMREN.

EXHIBIT D – A free translation of the form lease agreement for EXHIBIT C, which is the same form for EXHIBIT B.

9. The seventh page of each of the lease agreements includes an Appendix 1 which identifies "The Leasehold" at para. 1.A.  See, *EXHIBIT D at 13th page; EXHIBIT B at 7th page; EXHIBIT C at 8th page.*  That para 1.A. says that the leasehold shall be the "equipment" identified in the attached pro forma invoice.

(a) The pro forma invoice for the M/V SEMA ANA identifies a ship called the M/V KARIA which was the SEMA ANA's earlier name. *EXHIBIT C at 9th page. ;  see also, EXHIBIT A at Exhibit 4, pp. 3.*

(b) The pro forma invoice for the M/V CEMREM identifies a ship called the M/V LYDIA which was the CEMREM's earlier name.  *EXHIBIT B at 8th page;  see also, EXHIBIT A at Exhibit 4, pp. 1 – 2.*

10. Both lease agreements are dated "8 Mayis 2008" which is Turkish for May 8, 2008 – some 7-1/2 months before defendant's first delivery of bunkers and lube oil.

6

11. Both lease agreements:

    (a) Identify the lessee as "Bareboat Charterer." *EXHIBIT D, Sect. I.I(c).*

    (b) Identify plaintiff as the Lessor. *Id. at Sect. I.I(b).*

    (c) Have terms extending to 2012. *Id. at 1.4; Appendix I.D (at p.12).*

    (d) Provide that the Lessor (plaintiff) is not the bareboat charterer's manufacturer, seller, or operator. *EXHIBIT D, Sect. 2.1.*

    (e) Provide that the Bareboat Charterer is to be responsible for "all payments of any kind and category required to be paid with respect to the … use, operation and carriage of the leased equipment … ," and that the Lessor (plaintiff) is not to be responsible for the same. *Id. at Sects. 2.2(e) and 3.1(b).*

    (f) Provide that the Bareboat Charterer, in its capacity as operator, shall be liable to the government and third parties for, among other things, by the leased equipment's "use and operation." *Id. at Sect. 3.4.*

    (g) Provide that all ordinary and extraordinary maintenance and repair work shall be for the account of the Bareboat Charterer. *Id. at Sect. 3-9.*

    (h) Provide that they are made pursuant to Turkish Leasing Law 3226. *Id. at Sect. 1.2.* That law, the correct name of which is the Turkish Financial Leasing Act, provides in part that the financial lessor can neither interfere with nor be held liable for the operation and

7

management services related to the property which is the subject of the financial lease. The relevant provisions are as follows:

**REGULATION ON FOUNDATION AND ACTIVITIES OF FINANCIAL LEASING COMPANIES**

**Article 10**

**Prohibition of Different Transactions**

Financial lessors are not entitled to perform activities which are not directly related to financial leasing transactions.

**The Lease Agreement**

**Article 4-** The lease agreement is an agreement which stipulates that the lessor relinquishes possession of a good, which was purchased from a third party or acquired for some other reason, to the lease holder so that the lease holder receives any kind of benefit from the good with the condition of non-termination for a certain period and in exchange of rental rate.

**RIGHTS AND OBLIGATIONS OF THE LEASE HOLDER:**

**Article 13:**

The lease holder is the possessor of the goods subject to the financial leasing during the contractual period and he has the right to receive every kind of benefit pursuant to the contractual objective.

The lease holder shall use the goods subject to the financial leasing carefully according to the provisions and conditions in the contract.

Unless there is a provision to the contrary, the lease holder is liable for all kind of maintenance and protection of the goods concerned and costs for maintenance and repair are on the lease holder's account.

12. The leases were made in Turkey. Under Sect. 388 of the Turkish Code of Obligations, no person may make an arbitration agreement on behalf of a third party unless specifically authorized to do so. That section provides:

> **Article 388 of Code of Obligations:**
>
> **The scope of the power of attorney**
>
> The scope of the power of attorney, unless it is explicitly specified in the agreement, is determined by the nature of the work it is related to.
> The power of attorney principally involves the power to realize the compulsory legal transactions for the performance of the tasks set forth in such power of attorney.
> Unless the Proxy was authorized specifically, he/she cannot file a law suit, make a settlement, resolve a dispute by arbitration, donate or transfer an immovable or establish any encumbrance on it.

8

13. Plaintiff relinquished possession and control of the TWO VESSELS to the Bareboat Charterers on May 8, 2008. Possession and control has remained uninterrupted with them since that time.

14. Throughout the period of the lease term for the TWO VESSELS, including the period of time from December 24, 2008 to March 26, 2009 when defendant alleges it supplied the bunkers and lube oil, the said TWO VESSELS were manned, operated, and controlled by the lessees – not by plaintiff.

>   (a) The masters, officers and crew of the TWO VESSELS were answerable to, controlled by, and compensated by the Bareboat Charterers, not by plaintiff.
>
>   (b) The operations of the TWO VESSELS were controlled solely by the Bareboat Charterers who decided, among, other things, all navigational issues including the ports of call and routes.
>
>   (c) The equipping and supplying of the TWO VESSELS was the responsibility of the Bareboat Charterers. Plaintiff neither ordered equipment/supplies nor undertook to pay for them.

15. The bunker confirmations on which defendant relies [*EXHIBIT A at Exhibit 1-A*] do not say that defendant dealt with plaintiff. They identify "The Buyer/Account" as:

>   VESSEL/OWNERS/MANAGERS/CHARTERERS/ CMR
>   DENIZCILIK VE TICARET A.S. AS MANAGER ON BEHALF
>   OF THE REGISTERED OWNERS

16. Defendant's invoices for the bunkers and lube oil do not show plaintiff's name, either. To the contrary, the four of the invoices are addressed in part to:

9

CEMREM SHIPPING INC. MARSHALL ISLAND
C/O: CMR DENIZCILIK TIC A.S. ISTANBUL TURKEY

*EXHIBIT A at Exhibit 1-B (first four invoices).* Cemrem Shipping Inc. is one of the two bareboat charterers. *See, para. 7(b), above; and EXHIBIT B.* Throughout, plaintiff has protested to defendant that it was not party to or bound by the purchase/sale transaction or defendant's arbitration clause. *EXHIBIT E; see also, EXHIBIT A, p. 6.* ("*By letter dated August 13, 2010, Garanti alleged that there was no supply contract and no arbitration agreement*")

      17.    CMR was not plaintiff's agent and did not act on plaintiff's behalf in this matter. If it acted in an agency capacity, it was likely as agent for the Bareboat Charterers.

      18.    In July of 2009, defendant brought an action in the Commercial Division of the Supreme Court of Mauritius, in aid of its claims, to force the judicial sale of the M/V CEMREM. *See, EXHIBIT F.* In its pleading, defendant alleged that the sale was governed by "Sale General Conditions." *Id. at p. 3, para. 4.* Those conditions contain a jurisdiction clause at para. 14 which provides:

> In case of a dispute between the parties concerning this bunker sale/supply agreement, Istanbul (Levent) Courts and enforcement Offices shall be exclusively competent.

*Id. at p. 9.*

COUNT 1 – INJUNCTIVE RELIEF

19. A New York arbitration has been initiated against plaintiff although plaintiff has not agreed to arbitrate directly or by operation of law. As a result, plaintiff is and will be irreparably harmed absent injunctive relief.

20. Based on the allegations of paras. 1 – 18, supra:

   (a) Plaintiff is likely to succeed on the merits as to the issue of whether it is obligated to arbitrate defendant's claims in New York. Or in the alternative,

   (b) There are sufficiently serious questions going to the merits of the issue of plaintiff's obligation to arbitrate to make them a fair ground for litigation and the balance of hardships tips decidedly in plaintiff's favor since plaintiff would otherwise be forced to the time, expense and effort of an arbitration it never agreed to which is held half way around the world.

COUNT 2 – DECLARATORY JUDGMENT

21. As alleged above:

   (a) There is an actual controversy between the parties; and

   (b) A declaratory judgment would resolve that controversy. The alleged agreement to arbitrate is contained in sales Confirmations given by defendant for the bunkers and lube oil. If is plaintiff is not contractually obligated by the arbitration provision on which defendant relies, then it is not personally liable under that same

     contract for the unpaid amounts in respect of the lube oil and bunkers

22. The Court should exercise its discretion and grant declaratory relief for the following reasons:

  (a) The existence and effect of contracts for the chartering and supplying of ocean-going vessels in international trade raise issues within the Court's recognized expertise in admiralty and maritime matters.

  (b) The case has connections with this forum in that plaintiff is registered to do business in New York State; and the arbitral agreement on which defendant relies calls for New York arbitration.

  (c) As with most maritime commercial matters, the issues raised are capable of objective resolution and the proofs are and will be documentary in nature.

  (d) Since defendant's claims for nonpayment and the obligation to arbitrate arise out of the same agreement, a determination that plaintiff is not obligated to arbitrate defendant's claim would also resolve the issue of whether plaintiff is obligated under that agreement to pay defendant's claim.

WHEREFORE, plaintiff respectfully requests judgment and interlocutory relief as follows:

  A. Restraining and/or enjoining the New York arbitration commenced by defendant unless there is a final determination herein that plaintiff is obligated under defendant's New York arbitration clause; and

  B.  A declaratory judgment that plaintiff is not bound defendant's New York arbitration provision;

  C.  Granting plaintiff its costs and disbursements; and

  D.  Granting plaintiff such and other further relief to which it may be entitled.

Dated:  New York, NY, January 14, 2011

      CICHANOWICZ CALLAN KEANE
      VENGROW & TEXTOR, LLP
      61 Broadway 3000, New York, NY 10006
      212-344-7042
      Attorneys for Plaintiff

    By: _____
      Joseph De May [JD-9105]